Edward C. FRANKLIN, Plaintiff,

v.

CITY OF KANSAS CITY, Kansas Police
Department, et al., Defendants.

No. 96–3199–JWL.

United States District Court,
D. Kansas.

March 20, 1997.

Edward Charles Franklin, Leavenworth,
KS, pro se.

Robert Patrick Burns, City of Kansas City,
Kansas–Legal Dept., Kansas City, KS, for
Defendants.

*MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

## I. Introduction.

This case comes before the court on the
defendants' motion for summary judgment
(Doc. # 18) pursuant to Fed.R.Civ.P. 56.
Construing his *pro se* complaint liberally as
required by *Hall v. Bellmon,* 935 F.2d 1106,
1110 (10th Cir.1991), the plaintiff appears to
allege three causes of action under 42 U.S.C.
§ 1983: Defendant Dennis Barber, a Lieu-
tenant with the Kansas City, Kansas Police
Department, used excessive force when ar-
resting the plaintiff on May 11, 1994; Defen-
dant John Cosgrove, a detective with the
Kansas City, Kansas Police Department, and
two unknown Kansas City, Kansas police of-
ficers (John Does) witnessed and failed to
properly report Defendant Barber's use of
excessive force against the plaintiff; Defen-
dant Cosgrove presented false statements
and documents to the court, which defamed
him. In their motion for summary judg-
ment, the defendants make the following rel-
evant arguments: all claims against the
"Captain of Police" should be dismissed be-
cause the plaintiff has not asserted any claim

against the Captain of Police; Defendant Barber utilized reasonable force when arresting the plaintiff on May 11, 1994; assuming Defendant Barber used excessive force when he arrested the plaintiff, Defendant Cosgrove and the John Does are entitled to qualified immunity because they were not required or mandated to intervene to prevent Defendant Barber from using excessive force against the plaintiff; the plaintiff's defamation claim is barred by the applicable statute of limitations and fails to state a claim upon which relief may be granted. For the reasons discussed below, the court denies the defendants' motion concerning the plaintiff's excessive force claim against Defendant Barber and otherwise grants it.

## II. Facts.[1]

The following facts are viewed in the light most favorable to the plaintiff. On or about May 4, 1994, Defendant Cosgrove issued an arrest and pick-up order for the plaintiff on suspicion of rape, aggravated criminal sodomy, enticement of a child, and indecent liberties with a child. On May 11, 1994, Defendant Barber spotted the plaintiff driving his vehicle at or near the intersection of 10th and Central in Kansas City, Kansas, and began pursuing him in order to effectuate his arrest pursuant to Defendant Cosgrove's arrest and pick-up order. Initially, the plaintiff did not respond to Defendant Barber's emergency flashing lights or siren. While pursuing the plaintiff, Defendant Barber notified the police dispatch and Defendant Cosgrove that he was in pursuit of the plaintiff.

When the plaintiff pulled his car over to the side of the road, Defendant Barber allegedly stated, with his weapon drawn, "Put your hands where I can see them or I'm gonna blow your fuckin head off." *Complaint,* Exhibit A. Defendant Barber ordered the plaintiff to exit his vehicle with his hands up. The plaintiff contends that he stuck both hands out of the window of his car, opened the door of his car from the outside, and got out. Defendant Barber contends that the plaintiff initially did not comply with this order.

After the plaintiff exited his car, Defendant Barber ordered the plaintiff to put his hands on the car. The plaintiff complied and Defendant Barber proceeded to frisk the plaintiff and placed the plaintiff in handcuffs. Next, Defendant Barber holstered his weapon and, according to the plaintiff, threw the plaintiff on his car and began severely choking him. Defendant Barber purportedly stated, while choking the plaintiff,

> You son of a bitch the next time I send for you you better come. I don't care what no damn Decorsey says

Complaint, Exhibit A. At this time, Defendant Cosgrove arrived and pulled Defendant Barber off the plaintiff.[2]

On May 12, 1994, Defendant Cosgrove interviewed the plaintiff. Defendant Cosgrove did not notice any physical signs of injury on the plaintiff nor did the plaintiff complain to Defendant Cosgrove about any physical injuries caused during his arrest. Later that day, the plaintiff was transferred to the Wyandotte County Jail. Upon his arrival, the plaintiff purportedly informed two officers about his injuries.[3] After being processed, the plaintiff posted bond and was released.

Subsequent to the plaintiff posting bond, Defendant Cosgrove completed "prosecutive"

---

**1.** The plaintiff's response to the defendants' summary judgment motion (Doc. # 23) consists only of his three page affidavit, which essentially states that the plaintiff did not resist arrest, that Defendant Barber began choking him after he was in handcuffs, that Defendant Cosgrove and the John Does arrived while Defendant Barber was choking the plaintiff and failed to report Defendant Barber's use of excessive force, and that Defendant Cosgrove's investigative report, *Defs' motion,* Exhibit 4, conflicts with the plaintiff's recorded interview. *Id.,* Exhibit 5. However, because the plaintiff's complaint was verified under 28 U.S.C. § 1746, it has also the force and effect of an affidavit for summary judgment pur-

poses. *See Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 n. 1 (10th Cir.1994).

**2.** The defendants contend that the plaintiff resisted arrest. The defendants also contend that the plaintiff was not arrested or handcuffed until after Defendant Cosgrove arrived.

**3.** The defendants contend that while at the Wyandotte County Jail, the plaintiff never complained about any physical injuries arising from his arrest. The defendants admit that the plaintiff did inform an officer that he had bleeding ulcers and that he took medication for them.

summaries regarding his investigation of the charges against the plaintiff and submitted them to the Wyandotte County District Attorneys Office. The plaintiff was charged with Aggravated Criminal Sodomy and Rape in the District Court of Wyandotte County, Kansas, case number 94–CR–926. At the time the defendants' summary motion judgment was filed, these charges were still pending.

On April 18, 1996, the plaintiff filed this lawsuit. In an order dated April 30, 1996, the court dismissed any and all claims against the Kansas City, Kansas Police Department and the Chief of Police because the plaintiff made no allegations concerning the policies or training procedures of the Kansas City, Kansas Police Department.[4] (Doc. # 4).

### III. Summary judgment standard.

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored

procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion.

#### A. Excessive Force.

##### 1. Standard.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court directed lower courts to analyze constitutional claims of excessive force arising during the course of an arrest under the Fourth Amendment standards of objective reasonableness. *Id.* at 395, 109 S.Ct. at 1871. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872. The *Graham* Court explained,

> the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force ... [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Kiesling v. Troughton*, No. 95–8048, 1997 WL 111256 at *2 (10th Cir. Mar 13, 1997)(citing *Graham*, 490 U.S. at 396–397, 109 S.Ct. at 1872). Relevant factors in determining whether the force used by an arresting officer was objectively reasonable include the severity of the crime, whether the subject posed an immediate threat to the safety of the officer, and whether the subject was re-

---

4. For the same reason, the court concludes that all claims against the Captain of Police, whom the plaintiff fails to identify, should also be dismissed.

sisting arrest. *Id.* (citing *Wilson v. Meeks,* 52 F.3d 1547, 1553 (10th Cir.1995)). In addition, an assessment of the degree of force actually used is critical to the balancing test used to determine if the force was excessive. *Wells v. State of Okla. ex rel. Dept. of Public Safety,* No. 95–6429, 1996 WL 557722, *3 (10th Cir. Sep 30, 1996)(citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985)).

## 2. Analysis

Viewing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has produced sufficient evidence in support of his claim of excessive force against Defendant Barber to preclude summary judgment. In his submissions, the plaintiff states that he pulled over to the side of the road as soon as he noticed Defendant Barber's flashing emergency lights, that he did not resist arrest, and that Defendant Barber handcuffed him before he began to choke the plaintiff. Thus, assuming the facts are as the plaintiff contends, which the court must for the purpose of this motion, Defendant Barber's conduct, choking an arrestee who is not resisting arrest and who is already in handcuffs, is clearly an objectively unreasonable use of force. *See Graham,* 490 U.S. at 396–397, 109 S.Ct. at 1871–72.

In their analysis, the defendants do not discuss the plaintiff's excessive force claim in light of the plaintiff's version of the facts. Rather, they contend that Defendant Barber's conduct was reasonable under their version of the facts. Summary judgment requires the court to view the evidence in a light most favorable to the plaintiff. *Jones,* 54 F.3d at 628. With that premise in mind, the court concludes that there are fact questions that, if a reasonable finder of fact resolved them in favor of the plaintiff, would undermine Defendant Barber's reasonableness defense. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. As a result, the court denies the defendants' summary judgment motion with respect to the plaintiff's claim of excessive force against Defendant Barber. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

## B. Qualified immunity on failure to inform claim.

### 1. Standard.

Qualified immunity is an affirmative defense against § 1983 claims alleging excessive force. *Wilson v. Meeks,* 52 F.3d 1547, 1553 (10th Cir.1995). The defense provides immunity from suit, not merely from liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). Once the defense of qualified immunity is asserted, the plaintiff bears the burden of coming forward with facts "sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988). The plaintiff "initially bears a heavy" burden and "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir.1996). "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright v. Rodriguez,* 51 F.3d 1531, 1535 (10th Cir.1995) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

### 2. Analysis.

Viewing the facts in a light most favorable to the plaintiff, the court concludes that Defendant Cosgrove and the John Does are entitled to qualified immunity. In their memorandum, the defendants contend that assuming Defendant Barber used excessive force when he arrested the plaintiff, Defendant Cosgrove and the John Does are entitled to qualified immunity because there exists no "... set of circumstances which required and mandated ... [their] intervention to prevent the use of excessive force by defendant Barber." *Def.'s motion,* at 10. However, the plaintiff does not claim Defendant Cosgrove and the John Does violated his constitutional rights when they failed to intervene. Rather, the plaintiff claims Defendant Cosgrove and the John Does violated his constitutional rights when they failed

to report Defendant Barber's alleged use of excessive force.

■ Although they have misconstrued the precise point made in this count of the plaintiff's complaint, the defendants clearly contend that Defendant Cosgrove and the John Does are entitled to qualified immunity for their conduct here and that, therefore, they are entitled to summary judgment. Thus, the plaintiff has the burden to demonstrate why Defendant Cosgrove and the John Does are not entitled to qualified immunity by coming forward with facts sufficient to show both that the conduct of Defendant Cosgrove and the John Does violated the law and that the law was clearly established when the alleged violation occurred. *Losavio,* 847 F.2d at 646. The plaintiff has failed to produce any authority standing for the proposition that an officer is required to report a fellow officer's alleged use of excessive force. Moreover, the court has been unable to find any authority to support such a proposition. As a result, the court concludes that the alleged conduct of Defendant Cosgrove and the John Does did not violate any clearly established law and, therefore, Defendant Cosgrove and the John Does are entitled to summary judgment on this claim based on qualified immunity. *Albright,* 51 F.3d at 1535.

## C. Defamation claim.

The plaintiff does not indicate whether his defamation claim is asserted under § 1983 or whether it is a pendent state law claim. Because the court is required to construe the *pro se* plaintiff's complaint liberally, the court will address the plaintiff's defamation claim under both theories.

### 1. Statute of limitations.

■ An action for defamation (libel or slander) under Kansas law must be brought within one year. K.S.A. § 60–514(a). In order to determine the statute of limitations for a claim under 42 U.S.C. § 1983, courts must look to the underlying state's statute of limitations governing personal injury claims. *See Hardin v. Straub,* 490 U.S. 536, 538, 540, 109 S.Ct. 1998, 2000, 2001, 104 L.Ed.2d 582 (1989); *Hamilton v. City of Overland Park,* 730 F.2d 613, 614 (10th Cir.1984)(applying Kansas personal injury limitation). In Kan-

sas, a personal injury action must be brought within two years after a cause of action accrues. K.S.A. § 60–513(a)(4) & (b).

The alleged defamation occurred on August 1, 1994. The plaintiff filed his complaint on April 18, 1996. Thus, because the plaintiff filed his complaint more than one year and but less than two years after Defendant Cosgrove's allegedly defamatory conduct, the court concludes that the plaintiff timely filed his § 1983 defamation claim, but failed to timely file his state common law defamation claim. K.S.A. § 60–514(a); K.S.A. § 60–513(a)(4) & (b). As a result, although the plaintiff's state common law defamation claim is time barred, the plaintiff's § 1983 defamation claim is not.

### 2. Failure to state a claim upon which relief may be granted.

Section 1983 does not itself create any substantive rights. *Gallegos v. City & County of Denver,* 984 F.2d 358, 362 (10th Cir.), cert. denied, 508 U.S. 972, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993). Rather, it provides a mechanism for the vindication of federal constitutional or statutory violations by persons acting under color of state law. *Bozner v. Sweetwater County School Dist. No. One,* 935 F.Supp. 1230, 1235 (D.Wyo.1996). The purpose of section 1983 is to deter state actors from using the badge of their state authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 161–163, 112 S.Ct. 1827, 1829–30, 118 L.Ed.2d 504 (1992)(citing *Carey v. Piphus,* 435 U.S. 247, 254–257, 98 S.Ct. 1042, 1047–49, 55 L.Ed.2d 252 (1978)). The first step to resolving a section 1983 claim is to identify the constitutional right allegedly violated. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979).

In this case, the plaintiff does not explain how Defendant Cosgrove's allegedly defamatory conduct violated any of his federally protected rights. He simply asserts that Defendant Cosgrove presented false statements and documents to the court and to the Grand Jury which "... corrupted the mind of the Grand Jury, or court (8–1–94) Pre-

trial," Complaint, Exhibit B, and caused the plaintiff ". . . problems, disrupting his household and spouse." *Id.*

■ The Tenth Circuit has held that a defamatory statement may constitute a violation of an individual's due process liberty interest and, therefore be actionable under § 1983, if the individual is a terminated public employee who can show that his or her termination resulted in the publication of information which was false and stigmatizing and which foreclosed his or her freedom to take advantage of other employment opportunities. *See McCue v. State, Dept. of Human Resources,* No. 95–2116–JWL, 1995 WL 522896 at * 3 (D.Kan., Aug 02, 1995) (citing *Sipes v. United States,* 744 F.2d 1418 (10th Cir.1984)). The plaintiff's claim clearly does not factually fall under *Sipes.* However, construing the plaintiff's pleadings liberally, it appears that the plaintiff might be arguing that Defendant Cosgrove violated the plaintiff's due process rights when he obstructed justice by making allegedly false statements to the grand jury and the court. Based on the court's research, no court has recognized such a theory under section 1983. Moreover, because the plaintiff has failed to produce any admissible evidence supporting his argument that Defendant Cosgrove presented false statements concerning the plaintiff to the grand jury or the court, the plaintiff's novel theory fails at the summary judgment stage in any event. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, because section 1983 is only a mechanism under which an individual may seek redress for violations of federally protected rights and because the plaintiff has failed to demonstrate that his defamation/perjury claim involves a violation of any of his federally protected rights, the court concludes that summary judgment is appropriate. *Id.; Gallegos,* 984 F.2d at 362.

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion for summary judgment is denied with respect to the plaintiff's excessive force claim against Defendant Barber and granted with respect to the plaintiff's other claims.

**IT IS FURTHER ORDERED** that the clerk change the caption on this matter to "Franklin v. Barber", that this case be referred to a magistrate judge for further pretrial proceedings and that the plaintiff's mo-

tions for appointment of counsel (Doc. # 22) and to compel production of documents (Doc. # 24) and the defendant's motion to file out of time (Doc. # 25) be referred to the magistrate judge for disposition.

**IT IS SO ORDERED.**